File Date: _2-11-2008_____

Case No: _08cv 939_____

ATTACHMENT # _1_____

EXHIBIT _____

TAB (DESCRIPTION)
_Proceedings from 1/5/2005_

To: Clerk- of- Court

INClosed- are- All-

Court - PROCeeding

IN- The- Cook-

County- CiRCuit

Court- foR- The

Judge. FRom-fed-

27th- 2004- UNtiL

Fed- 4th- 2005

STATE OF ILLINOIS    )
                          )  SS.
COUNTY OF C O O K    )

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CRIMINAL DIVISION


THE PEOPLE OF THE     )
STATE OF ILLINOIS,    )
                          )
       Plaintiff,    )
    vs.               )  Case No. 04 CR 5900
                          )
DWAYNE GRIFFIN,       )
                          )
       Defendant.    )


          REPORT OF PROCEEDINGS had
before the Honorable Sharon Sullivan, Judge of
said Court, on the 5th day of January, 2005.

    APPEARANCES:

        HON. RICHARD DEVINE,
          State's Attorney of Cook County, by:
        MS. STEPHANIE CALLAS,
        MS. LORI SCHULTZ,
          Assistant State's Attorney,
          appeared on behalf of the People;

        MR. DWAYNE GRIFFIN appeared pro se.


ROSEMARY STEPHENS, CSR, #84-2515
Official Court Reporter
5600 Old Orchard Road, Room 204
Skokie, IL  60077

# I N D E X

PEOPLE VS. DWAYNE GRIFFIN

DATE:   JANUARY 5, 2005

PAGES: 0-1 to 0-85

JURY SELECTION

1          THE CLERK:  Dwayne Griffin.

2          THE COURT:  Mr. Griffin is before the

3     court.  Sir, the case was held to today for

4     trial.  State, you are ready for trial?

5          MS. CALLAS:  Yes, Judge, we are.

6          THE COURT:  Mr. Griffin, you are also

7     ready?

8          THE DEFENDANT: Yes, ma'am, but let it be

9     known for the record, I still don't have the

10    arrest report.

11         THE COURT:  State, I believe you tendered

12    the arrest report on several court dates, most

13    recently including January 3.

14         MS. CALLAS: Correct.

15         THE COURT:  Mr. Griffin, I notice that you

16    are in your Department of Corrections uniform.

17         THE DEFENDANT: Yes, ma'am, I ain't going to

18    change clothes.

19         THE COURT:  The Public Defender might have

20    civilian clothes.

21         THE DEFENDANT: I don't want them.

22         THE COURT:  Sir, any preliminary matters

23    before we begin with jury selection?

24         THE DEFENDANT: Well, just so the Court knows

0 - 3

1    I do not have a copy of the arrest report, you

2    know, the one with the police, with their

3    signature.  I don't have a copy of it that they

4    want to use on the street.  I know they used one

5    with the signature.  I don't have that one but I

6    am going to pick the jury without the arrest

7    report, so I am ready.

8        MS. CALLAS:  One moment please.

9        THE COURT:  The State made a copy two days

10   ago of the discovery copy.  That was put in the

11   Court file.

12       MS. CALLAS:  The arrest report was given to

13   the defendant consisting of 5 pages, a computer

14   generated report the report that you are looking

15   for.  The one page report is no longer being

16   generated in this police district.  This is what

17   it looks like now.  In some police districts they

18   still have the one page but in this case there is

19   not.

20       THE DEFENDANT: When I put the police on the

21   stand, they got to be under oath and tell me

22   that.  I want that on the record.  I am ready.

23   Let's go.

24       THE COURT:  I need a list of witnesses,

0 - 4

1    State.  Mr. Griffin, is there any witnesses that

2    you might call?

3    THE DEFENDANT:  No.  Call your witnesses.  I

4    am ready.

5    THE COURT:  Let me explain to you at 1:00

6    o'clock we are going to bring the jurors up

7    here.  We are going to do jury selection.

8    THE DEFENDANT:  The first 12 that sit down.

9    That's all I need.  Come on.

10    THE COURT:  Let me explain to you there's a

11    process of jury selection.

12    THE DEFENDANT:  I know the process.

13    THE COURT: Let me explain what I am going to

14    do.  Each judge does it differently.  I am going

15    to fill in the jury box, address all of the

16    jurors.  I am going to explain to them the case

17    that's before the Court.  I am going to tell them

18    the name of the case, explain the charge.  I am

19    going to tell them how the case is going to

20    proceed.  Many of them have never been in a

21    courtroom, have never participated in a trial.

22    I will then set 14 jurors in the jury

23    box.  The clerk will call those names, and I will

24    question those jurors.  Each side then will have

1       an opportunity to question jurors.  If you choose

2       you can either write questions down that I can

3       ask or you can have an opportunity to ask any

4       additional questions.  Both the State and I have

5       that opportunity pursuant to the Supreme Court

6       rules.  After all 14 jurors have been questioned,

7       we will take a recess and we will then go through

8       the jurors and we will go through them in the

9       order in which they are seated and we can accept

10      or reject them.  Each side has 7 peremptory

11      challenges they can use.  Once we have a jury

12      selected, we will begin with the evidence.

13          MS. CALLAS:  Judge, I'd like to do an oral

14      Motion in Limine right now that the defendant be

15      told that he is not allowed to mention in front

16      of the jury at any time that he was offered 2

17      years on a reduced charge of Class 3 theft.  He

18      also is not allowed to mention that he is Class X

19      mandatory by background if convicted of this

20      charge facing a minimum of 6 years and a maximum

21      of 30.  I would like the defendant to be banned

22      from mentioning he received 11 years on his last

23      burglary.  I would like the defendant to be told

24      that he is not allowed to tell the jury any of

0 - 6

1        his prior sentence on any of his prior cases.

2            THE DEFENDANT: Can the jury know that the

3        Appellate Court reversed the burglary she is

4        talking about?  I got copies.

5            THE COURT:  That's not relevant in this

6        case.

7            MS. CALLAS:  I make a motion that be barred

8        as well.

9            THE COURT: That is barred.  Sir, so you

10       know, you are not to mention any agreement or

11       discussions you have had with the State regarding

12       plea agreements.  Sentencing is an issue that

13       comes only if you are found guilty and is not an

14       issue.

15           THE DEFENDANT: I ain't going to be found

16       guilty.

17           THE COURT:  You are not to mention any other

18       cases or appellate court cases to the jury.  The

19       State's Motion in Limine is granted.  That means

20       you are not to mention those things to the jury.

21           THE DEFENDANT: All right.  I won't mention

22       it.  I am ready.

23           THE COURT:  It's 1:00 o'clock.  The jurors

24       should be ready.  We will proceed with jury

1    selection.

2        THE DEFENDANT: The arrest report given to me

3    is okay but you and the State's Attorney, I gotta

4    present this to the jury that I don't have a copy

5    of that because whoever is going to give

6    statements, I got to set this before them and ask

7    them is this the arrest report they use on the

8    street when they arrest somebody what they gave

9    me.  This is evidence, correct?

10       THE COURT:  I am not sure what your question

11   is.

12       THE DEFENDANT: The arrest report that they

13   say they gave to me, do you understand what I am

14   saying?

15       THE COURT:  They gave you a 5-page document

16   which they call an arrest report which is

17   computer generated.

18       THE DEFENDANT: But it has no signature on

19   it.  So I just want to let you know that I want

20   to have the jury, to make them aware that I don't

21   have that but you gave this to me.

22       THE COURT:  I don't know what whether that

23   issue is relevant or not in the case.

24       THE DEFENDANT: It's very relevant because if

1    its not relevant, then this is false evidence

2    that I am receiving.

3         THE COURT:  The evidence is going to come

4    from the witnesses who testify.

5         THE DEFENDANT: So I can use this?

6         THE COURT:  I don't know, sir.  You just

7    can't show the jury or the witness a document.

8    There's certain rules that have to be followed.

9    It depends on what their testimony is.

10        THE DEFENDANT: This is documentation that's

11   been given to me.

12        THE COURT:  Do you intend to use this to

13   impeach the witness, you may if appropriate.

14        THE DEFENDANT: I got 12 copies for the jury

15   of the pictures.  Because on here one window is

16   busted, then 2 windows is busted.  This is

17   evidence that I want to present to the jury.

18        MS. CALLAS:  We have the actual photographs

19   that the defendant is showing you.  I would like

20   to point out on page 3 of 5 on the arrest report,

21   the third box from the bottom indicates by the

22   attesting officer, "I hereby declare that the

23   facts stated herein are accurate to the best of

24   my knowledge, information and or belief." The

1    attesting officer is Officer Prill (phonetic.)

2    Star No. 15774.  That has now taken the place of

3    the signatures you are talking about on the old

4    one page arrest reports.

5        THE DEFENDANT: When did that come into

6    effect?

7        MS. CALLAS:  Within the last year or two.

8    They are slowly getting rid of that.  That one

9    page does not exist.  They don't have it.

10       THE DEFENDANT: Okay, good.  Then that's good

11   on my behalf.  Okay.  Thank you.  That's all I

12   need to know.

13       THE COURT:  We are ready for the jury.  The

14   deputies will call for the jury.  As soon as the

15   jury is here, we will call for the defendant.

16           The defendant is present.  Everybody

17   ready for the jury.

18       MS. CALLAS: Yes.

19       THE COURT:  Please stand while they bring

20   the jurors in.

21           Good afternoon, I am judge Sharon

22   Sullivan.  I thank you for your presence here

23   today.  I know you come from different parts of

24   the county. You have different jobs and family

1    responsibilities that you had to set aside today

2    to be here in response to your summon for jury

3    service.

4            We are called upon very infrequently

5    to do something, and jury service is one of the

6    times in which you are called upon to do

7    something.  So I appreciate your presence here

8    today.  I know it's a difficult day to travel,

9    given the snow out there.  So I certainly

10   appreciate what you have gone through to be here

11   today.

12           The case that is ready for jury trial

13   at this time is the People of the State of

14   Illinois versus Dwayne Griffin and the People of

15   the State of Illinois in this case are

16   represented by two Assistant State's Attorneys;

17   Ms. Stephanie Callas and ms. Lori Schultz.  The

18   defendant in this case is Mr. Dwayne Griffin.  If

19   you want to introduce yourself.

20       THE DEFENDANT: Good evening, ladies and

21   gentlemen.

22       THE COURT: Mr. Griffin is representing

23   himself in this case.  Mr. Griffin is charged in

24   a document called an information with the offense

1   of burglary.  It alleges that he without

2   authority knowingly entered into a Blockbuster

3   Video located at 1303 North Milwaukee Avenue in

4   Chicago, Cook County, Illinois with the intent to

5   commit a theft.  This information that I have

6   read to you is not any evidence against

7   Mr. Griffin.  It is simply the formal method by

8   which a defendant is charged with a crime.  This

9   is not evidence and must not be considered by you

10  as any evidence of his guilt.

11              In this case there are going to be a

12  number of witnesses who are going to be called

13  in.  Shortly we will read those names off to you

14  and ask you if you know any of those people.  But

15  at this time we are going to begin with jury

16  selection.  I am going to ask the clerk to call

17  14 names and fill in the jury box when the clerk

18  calls your name, fill in the front row first and

19  then the back row and the jurors will be

20  considered in the order in which they are

21  called.

22       THE CLERK: Carlisle Rex-Waller, Kimberly

23  Condon, Gloria Vega, David Burke, Frank Patzke,

24  Ryan Migawa, Leyla Touma, Steven Foster, Cynthia

1    Nolan, Ted Kodama, Annette Dariano, America

2    Farah, Joseph Miklitsch, Jung Kim.

3         THE COURT:  At this time I am going to ask

4    all of you jurors, because you are all going to

5    be questioned, to stand and the clerk is going to

6    administer an oath to you to truthfully answer

7    the questions posed to you.  Stand and raise your

8    right hand.

9              (Jurors sworn to answer questions.)

10        THE COURT:  During the jury selection

11   process, questions are asked of you as

12   prospective jurors not to pry into your

13   background or make you feel uncomfortable.  Both

14   sides are looking for jurors who have an open

15   mind and could listen to the evidence in this

16   case and base your decision on the evidence in

17   this case, not on some bias or prejudice that you

18   may have.

19              Mr. Griffin, as all other persons who

20   are charged with a crime, is presumed to be

21   innocent of the charges that bring him here.

22   That presumption cloaks him now at the onset of

23   the trial and will continue to cloak him

24   throughout the course of the proceeding, during

1    that jury selection process, during opening

2    statements and during the evidence and closing

3    arguments and during the instructions of law that

4    I will read and provide to you at the conclusion

5    of the case and on into your deliberations unless

6    and until you individually and collectively are

7    convinced beyond a reasonable doubt that the

8    defendant is guilty.

9            It's absolutely essential that we

10    select this jury and each of you understand and

11    embrace the following fundamental principles that

12    all persons charged with a crime are presumed to

13    be innocent and that it is the burden of the

14    State who has brought the charges to prove the

15    defendant guilty beyond a reasonable doubt.  What

16    this means is that the defendant has no

17    obligation to testify on his own behalf or to

18    call any witnesses in his defense.  He may simply

19    sit here and rely upon what he may perceive to be

20    the inability of the State to present sufficient

21    evidence to meet their burden.  Should that

22    happen, you will have to decides the case on the

23    basis of the evidence presented by the

24    prosecution.

O - 14

1          The fact that the defendant does not
2    testify must not be considered by you in any way
3    in arriving at your verdict.  However, should the
4    defendant elect to testify or present evidence or
5    witnesses, you are to consider that evidence in
6    the same manner and by the same standards as you
7    would the other evidence in the case.  The bottom
8    line is that there is no burden upon the
9    defendant to prove his innocence.  This is the
10   State's burden to prove him guilty beyond a
11   reasonable doubt.  You who are chosen as jurors
12   are what we call the triers of the fact.  It will
13   be your job to listen to the evidence to
14   determine the believability or credibility of
15   each of the witnesses and to decide what
16   happened.  It will then be your job to apply the
17   law to the facts in this case.  I will instruct
18   you on the law at the conclusion of the case by
19   reading to you jury instructions that will
20   accompany you into the jury room.  You will take
21   an oath, those of you who are selected as jurors,
22   that you will apply the law that is given to you
23   to the evidence in the case and in that way
24   decides the case.

1          So at this time I am going to ask some
2     questions of those of you who are seated in the
3     jury box first.  Certainly those of you who are
4     seated in the back pews, you will also be asked
5     questions.  Again, I am not trying to pry into
6     your background.  If anybody feels uncomfortable
7     in answering a question for some personal reason,
8     they can certainly indicate that to me and we can
9     make certain arrangements.  Although I prefer not
10    to have to do that.  But if necessary, we can do
11    that.  Let's me just ask all of you, does anybody
12    have a case pending, any lawsuits pending at the
13    present time?  Is anybody a party to an accident
14    case or a divorce proceeding?  Any type of
15    litigation at the present time?
16         MS. THOMPSON: I am in arbitration.
17         THE COURT:  What is your name.
18         MS. THOMPSON: Barbara Thompson.
19         THE COURT:  I introduced the attorneys and
20    Mr. Griffin to you.  Does anybody know Ms.
21    Callas, Ms. Schultz or Mr. Griffin?  No one is
22    indicating.  I am going to read off a list of
23    witnesses who may be called to testify in this
24    case.  The following are Chicago police officers,

```
 1      Officer Podjgorny, Detective Carabello, Chicago

 2      Police Officer Matthew Bloomstand.  Officer

 3      Prill.  Officer Aleese Lee and Yvette Nueva, Jose

 4      Padon.  Does anybody know any of these persons

 5      who may be called to testify in this case?  Let

 6      me begin with Carlisle Rex-Waller.

 7                      CARLISLE REX-WALLER,

 8      a prospective juror, having been first duly sworn

 9      to answer questions, was examined as follows:

10                      EXAMINATION

11                      BY THE COURT:

12          Q.    You live in Wilmette?

13          A.    Yes.

14          Q.    How long have you lived in that area?

15          A.    25 years.

16          Q.    Can you tell us where you work?

17          A.    I am a copy editor.  I work at home.

18          Q.    And are what's your marital status?

19          A.    Married.

20          Q.    An does your spouse work?

21          A.    He works for a company downtown,

22      National Surgical Hospital.

23          Q.    What is his position?

24          A.    CEO.
```

1       Q.    And you have 2 children.   Are they in
2    school?
3       A.    One in high school, one college.
4       Q.    Have you ever served on a jury before?
5       A.    No.
6       Q.    Have you ever been a witness in a
7    criminal case?
8       A.    No.
9       Q.    Ever a complainant in a criminal case?
10       A.    No.
11       Q.    Ever accused of a crime?
12       A.    No.
13       Q.    Have any close friends or family
14    members been victims of crimes?
15       A.    My sister a very long time ago.   I
16    wasn't even sure whether I should put it on
17    there.
18       Q.    Do you understand the defendant is
19    presumed innocent of the charges that bring him
20    here?
21       A.    Yes.
22       Q.    You understand the defendant does not
23    need to call any witnesses or present evidence on
24    his own behalf?

1       A.    Yes.

2       Q.    He need not testify and if he chooses

3  not to testify, you must not consider that in any

4  way in arriving at your verdict.

5       A.    I do.

6       Q.    And if he does testify, you understand

7  that you are to consider his testimony in the

8  same manner and by the same standard you would

9  judge the testimony of any other witness?

10      A.    I do.

11      Q.    You understand it is the State's

12  burden of proving the defendant's guilt beyond a

13  reasonable doubt?

14      A.    I do.

15      Q.    And if the State fails to meet their

16  burden of proof, would you be able to sign a

17  verdict form of not guilty?

18      A.    Yes.

19      Q.    And if the State proves the defendant

20  guilty beyond a reasonable doubt, would you be

21  able to sign a verdict form of guilty?

22      A.    Yes.

23      Q.    Do you have close friends or family

24  who are police officers?

1          A.    No.

2          Q.    Thank you.

3                          KIMBERLY CONDON

4     a prospective juror, having been first duly sworn

5     to answer questions, was examined as follows:

6                          EXAMINATION

7                          BY THE COURT:

8          Q.    You live in Northbrook?

9          A.    Yes.

10         Q.    How long have you lived in that area?

11         A.    Almost 6 years.

12         Q.    And can you tell us where you work and

13    what you do?

14         A.    I work at Publications International.

15    It's a book publishing company, and I am the

16    manager of the typesetting department.

17         Q.    You are married; is that correct?

18         A.    Yes.

19         Q.    And your husband?

20         A.    He is a carpenter and painter.  He

21    owns his own business.

22         Q.    And have you ever served on a jury?

23         A.    No.

24         Q.    Have you ever been a witness in a

1     criminal case?

2          A.     No.

3          Q.     Ever a complainant?

4          A.     No.

5          Q.     Ever accused of a crime?

6          A.     No.

7          Q.     Anybody close to you ever victim of a

8     crime?

9          A.     Yes.

10         Q.     You understand that the defendant is

11    presumed innocent of the charges that bring him

12    here?

13         A.     Yes.

14         Q.     And you understand that this is the

15    State's burden of proving the defendant guilty

16    beyond a reasonable doubt?

17         A.     Yes.

18         Q.     You understand that the defendant does

19    not need to prove his innocence?

20         A.     Yes.

21         Q.     He does not need to call any witness

22    or present any evidence on his own behalf?

23         A.     Yes.

24         Q.     You understand that if he chooses not

1        to testify, that you must not consider that in

2        any way in arriving at your verdict?

3              A.    Yes.

4              Q.    If he does testify, you should

5        evaluate his testimony in the same manner and

6        meet the same standards you would the testimony

7        of any other witness?

8              A.    Yes.

9              Q.    And do you have any close friends or

10       family who are involved in law enforcement?

11             A.    No.

12             Q.    If the State fails to prove the

13       defendant guilty beyond a reasonable doubt, would

14       you be able to sign a verdict form of not guilty?

15             A.    Yes.

16             Q.    And if they do prove him guilty beyond

17       a reasonable doubt, would you be able to sign a

18       verdict form of guilty?

19             A.    Yes.

20             Q.    Thank you,

21                               GLORIA VEGA,

22       a prospective juror, having been first duly sworn

23       to answer questions, was examined as follows:

24                               EXAMINATION

```
1                          BY THE COURT:

2          Q.    Gloria Vega?

3          A.    I don't understand a lot of English.

4          Q.    What language do you speak?

5          A.    Spanish.

6          Q.    Have you understood everything that I

7    have said?

8          A.    Just some.

9                          DAVID BURKE,

10   a prospective juror, having been first duly sworn

11   to answer questions, was examined as follows:

12                          EXAMINATION

13                          BY THE COURT:

14         Q.    David Burke?

15         A.    Yes.

16         Q.    You live in Elk Grove?

17         A.    Actually I moved recently to Morton

18   Grove.

19         Q.    How long have you lived in Morton

20   Grove?

21         A.    Six months.

22         Q.    And can you tell us where you work and

23   what you do?

24         A.    I work with Concentra Medical
```

1    centers.  I do sales, occupational medicine.

2         Q.    Your marital status?

3         A.    I am getting married on Saturday.

4         Q.    Congratulations.  This trial should be

5    over by then.

6         A.    I hope so.  I am a little concerned

7    about that.

8         Q.    I expect that the evidence in this

9    case will be heard tomorrow.  Most of tomorrow

10   will be the day we hear the evidence, and the

11   case may go to the jury tomorrow if not on

12   Friday.

13        A.    I may run into problems on Friday.  I

14   have family in town and engagements I have to

15   attend.

16        Q.    What time are the festivities

17   beginning?

18        A.    Probably right around 10:00 o'clock.

19   I have the entire day off from work, and I wasn't

20   anticipating actually getting called but I did

21   want to come and do my jury duty.

22        Q.    So if I understand, you wouldn't have

23   any problem with tomorrow but Friday is the day

24   before you are getting married?

```
 1        A.    It would kind of pose a small problem.

 2        Q.    Have you ever served on a jury before?

 3        A.    Yes.

 4        Q.    What type of case?

 5        A.    It was a civil lawsuit in 2001.

 6        Q.    Did the jury deliberate and reach a

 7   verdict?

 8        A.    Five days at the Daley Center.

 9        Q.    Five days of trial or deliberations?

10        A.    Deliberations in addition to the

11   trial.

12        Q.    I can see why you have some concerns.

13        A.    Yes.

14        Q.    But did the jury ultimately reach a

15   verdict?

16        A.    Yes.

17        Q.    Have you ever been the victim of a

18   crime?

19        A.    Yes.

20        Q.    Can you tell us about that?

21        A.    My sister was killed in a DUI reckless

22   homicide in 2001.  Then there was litigation, and

23   probation was broken and we had to go back and

24   things of that nature.
```

1          Q.    Were you a party to that?  Were you

2     involved in that case as a witness?

3          A.    No, I was not involved.

4          Q.    Would that affect your ability to be a

5     fair juror in this case?

6          A.    I don't believe so.

7          Q.    You understand that the defendant is

8     presumed innocent of the charges that bring him

9     here?

10         A.    Yes.

11         Q.    And you understand that he does not

12    need to prove his innocence.  He does not need to

13    call witnesses or present any evidence on his own

14    behalf?

15         A.    Yes.

16         Q.    And do you understand if he chooses

17    not to testify, that you may not consider that in

18    any way in arriving at your verdict?

19         A.    Yes.

20         Q.    And if he does testify, that you

21    should evaluate his testimony in the same manner

22    and by the same standard you would the testimony

23    of any other witness?

24         A.    Yes.

1        Q.    And you understand it's the State's

2    burden to prove the defendant guilty beyond a

3    reasonable doubt?

4        A.    Yes.

5        Q.    And have you ever been a witness in a

6    criminal case?

7        A.    No.

8        Q.    Ever accused of a crime?

9        A.    No.

10       Q.    And ever a complainant in a criminal

11   case?

12       A.    No.

13       Q.    Thank you.

14                              FRANK PATZKE,

15   a prospective juror, having been first duly sworn

16   to answer questions, was examined as follows:

17                              EXAMINATION

18                              BY THE COURT:

19       Q.    You live in Arlington Heights?

20       A.    Yes.

21       Q.    How long have you lived there?

22       A.    15 years.

23       Q.    Can you tell us where you work and

24   what you do?

1          A.      I am an investment advisor.  I have my
2     own firm.
3          Q.      And you are married?
4          A.      Yes, my wife does the same thing.
5          Q.      You have two children?
6          A.      Yes.
7          Q.      Have you ever served on a jury?
8          A.      Twice, grand jury and civil case.
9          Q.      And did the jury deliberate and reach
10    a verdict?
11         A.      Short and yes.
12         Q.      And you understand this is a criminal
13    case, the burden is different in a criminal case
14    it's one of proof beyond a reasonable doubt?  Do
15    you understand that the defendant does not need
16    to prove his innocence?  He does not need to call
17    witness or present evidence on his own behalf.
18         A.      Yes.
19         Q.      If he chooses not to testify, you
20    understand that you may not consider that in any
21    way in arriving at your verdict?
22         A.      Yes.
23         Q.      If he does testify, you are to
24    evaluate his testimony by the same standards you

1       would the testimony of any other witness.

2              A.    Yes.

3              Q.    And you understand that it's the

4       State's burden to prove the defendant guilty

5       beyond a reasonable doubt?

6              A.    Yes.

7              Q.    And have you ever been a witness in a

8       criminal case?

9              A.    No.

10             Q.    Have you ever been a complainant?

11             A.    No.

12             Q.    Have you ever been accused?

13             A.    No.

14             Q.    And anybody close to you ever the

15      victim?

16             A.    No.

17             Q.    And do you have any close friends or

18      family who are involved in law enforcement?

19             A.    No.

20             Q.    If the State fails to prove the

21      defendant guilty beyond a reasonable doubt, would

22      you be able to return a verdict of not guilty?

23             A.    Yes.

24             Q.    If the State does proof the defendant

1      guilty beyond a reasonable doubt, would you be

2      able to sign a verdict form of guilty?

3           A.    Yes.

4           Q.    Thank you.

5                            RYAN MIGAWA,

6      a prospective juror, having been first duly sworn

7      to answer questions, was examined as follows:

8                            EXAMINATION

9                            BY THE COURT:

10          Q.    Sir, you live he have Hoffman Estates?

11          A.    Yes.

12          Q.    How long have you lived there?

13          A.    Six months.

14          Q.    And where did you live before that?

15          A.    Arlington Heights.

16          Q.    And can you tell us where you work,

17     what you do?

18          A.    I work for F.E. Moran.  I am a

19     draftsman.

20          Q.    How long have you worked there?

21          A.    Three years.

22          Q.    Are you married?

23          A.    Yes.

24          Q.    What does your wife do?

1      A.    Well, she is kind of a substitute

2   teacher but she is pregnant right now.

3      Q.    Have you ever served on a jury?

4      A.    No.

5      Q.    Have you ever been the victim of a

6   crime?

7      A.    No.

8      Q.    Has anybody close to you ever been a

9   victim of a crime?

10     A.    Yes.

11     Q.    Have you ever been a witness or

12  complainant in a criminal case?

13     A.    No.

14     Q.    And you understand that the defendant

15  is presumed innocent of the charges that bring

16  him here?

17     A.    Yes.

18     Q.    And you understand he does not need to

19  prove his innocence or present any evidence on

20  his behalf?

21     A.    Yes.

22     Q.    And if he chooses not to testify, that

23  you not must not consider that in any way in

24  arriving at your verdicts?

1        A.     Yes.

2        Q.     If he does testify, that you would

3    evaluate his testimony in the same manner and by

4    the same standards you would the testimony of any

5    other witness?

6        A.     Yes.

7        Q.     You understand it is the State's

8    burden of proving the defendant guilty beyond a

9    reasonable doubt?

10       A.     Yes.

11       Q.     If the State fails to prove the

12   defendant guilty beyond a reasonable doubt, would

13   you be able to sign a verdict form of not guilty?

14       A.     Yes.

15       Q.     If they do prove him guilty beyond a

16   reasonable doubt, would you be able to sign a

17   verdict form of guilty?

18       A.     Yes.

19       Q.     And do you have any close friends or

20   family who are involved in law enforcement?

21       A.     A friend of my wife's is a cop.

22       Q.     What department, do you know?

23       A.     He is in Chicago.  I don't know what

24   district.

1      Q.    Is there anything about your

2   relationship with that person that would affect

3   your ability to be a fair juror in this case?

4      A.    No.

5      Q.    Do you understand that simply because

6   someone is a police officer does not mean that

7   there testimony is entitled to any greater

8   believability or less believability?  Do you

9   understand that?

10      A.    Right.

11                            LEYLA TOUMA,

12   a prospective juror, having been first duly sworn

13   to answer questions, was examined as follows:

14                            EXAMINATION

15                            BY THE COURT:

16      Q.    You live in Chicago?

17      A.    Yes.

18      Q.    What part?

19      A.    Wicker Park.

20      Q.    How long have you lived there?

21      A.    Three years.

22      Q.    And can you tell us where you work,

23   what you do?

24      A.    I work for an advertising agency, and

1       I am a creative director.

2              Q.    And are you married?

3              A.    No.

4              Q.    You have a partner?

5              A.    Yes, I'm engaged.

6              Q.    And what does your partner do?

7              A.    He is a graphic designer.

8              Q.    Have you ever served on a jury?

9              A.    No.

10             Q.    Have you ever been the victim of a

11      crime?

12             A.    Yes.

13             Q.    Can you tell us about that?

14             A.    I was attacked and sexually assaulted.

15             Q.    How long ago was that?

16             A.    Nine years.

17             Q.    Sorry about that. Was somebody charged

18      in that incident?

19             A.    Yes.

20             Q.    Did that get resolved?

21             A.    No, he left the country.

22             Q.    I am very sorry.  Would that

23      experience affect your ability to be a fair juror

24      in this case?

1         A.    No.

2         Q.    Would you be able to listen to the

3    evidence in this case and base a decision upon

4    what the evidence is in this case?

5         A.    Yes.

6         Q.    And if the State failed to prove the

7    defendant guilty beyond a reasonable doubt, would

8    you be able to sign a verdict form of not guilty?

9         A.    Yes.

10        Q.    And if they did prove him guilty

11   beyond a reasonable doubt, would you be able to

12   sign a verdict form of guilty?

13        A.    Yes.

14        Q.    And you understand that the defendant

15   is presumed innocent of the charges that bring

16   him here?

17        A.    Yes.

18        Q.    And that this is the State's burden to

19   prove him guilty beyond a reasonable doubt?

20        A.    Yes.

21        Q.    And do you understand that the

22   defendant does not need to call any witnesses or

23   present any evidence?

24        A.    Yes.

1          Q.    And if he chooses not to testify, that
2    you may not consider that in any way in arriving
3    at your verdict?
4          A.    Yes.
5          Q.    Do you have any close friends or
6    family in law enforcement?
7          A.    No.
8          Q.    And I am sorry to bring out that old
9    incident.    That's obviously something that one
10   gets over, but you believe that would not affect
11   your ability to listen to this case?
12         A.    Right.
13         THE COURT:    Thank you.
14                             STEVEN FOSTER,
15   a prospective juror, having been first duly sworn
16   to answer questions, was examined as follows:
17                             EXAMINATION
18                             BY THE COURT:
19         Q.    You live in Evanston?
20         A.    Yes.
21         Q.    How long?
22         A.    35 years.
23         Q.    And can you tell us where you work and
24   what you do?

```
1          A.     New Trier High School, custodian.

2          Q.     How long?

3          A.     Six years.

4          Q.     And are you married?

5          A.     Married.

6          Q.     What does your spouse do?

7          A.     She doesn't work.

8          Q.     And you have a one child?

9          A.     Yes.

10         Q.     And have you previously served on a

11   jury?

12         A.     No, I went but didn't get picked.

13         Q.     Have you ever been the victim of a

14   crime?

15         A.     No.

16         Q.     Anybody close to you ever the victim

17   of a crime?

18         A.     No.

19         Q.     Have you ever been a witness in a

20   criminal case?

21         A.     No.

22         Q.     And have you ever been accused of a

23   crime?

24         A.     No.
```

1          Q.    And do you understand the defendant is
2    presumed innocent of the charges that bring him
3    here?
4          A.    Yes.
5          Q.    And that it is the State's burden to
6    prove him guilty beyond a reasonable doubt?
7          A.    Yes.
8          Q.    And do you understand he does not need
9    to prove his innocence and does not need to call
10   any witnesses or present any evidence on his
11   behalf?
12         A.    Yes.
13         Q.    And you understand if he chooses not
14   to testify, that you must not consider that in
15   any way in arriving at your verdict?
16         A.    Yes.
17         Q.    And if he does testify, that you are
18   to evaluate his testimony in the same manner and
19   by the same standards you would the testimony of
20   any other witness?
21         A.    Yes.
22         Q.    Do you have any close friends or
23   family in law enforcement?
24         A.    No.

1        Q.    And if the State fails to prove the

2   defendant guilty beyond a reasonable doubt, would

3   you be able to sign a verdict form of not guilty?

4        A.    Yes.

5        Q.    And if the State does proof the

6   defendant guilty beyond a reasonable doubt, would

7   you be able to sign a verdict form of guilty?

8        A.    Yes.

9        Q.    Thank you.

10                        CYNTHIA NOLAN,

11   a prospective juror, having been first duly sworn

12   to answer questions, was examined as follows:

13                        EXAMINATION

14                        BY THE COURT:

15        Q.    Cynthia Nolan?

16        A.    Yes.

17        Q.    You live in Arlington Heights?

18        A.    Yes.

19        Q.    How long have you lived there?

20        A.    12 years.

21        Q.    Can you tell us where you work, what

22   you do?

23        A.    I work at a sales and marketing firm.

24   I am the accounting director.

1        Q.    How long have you worked in that

2    capacity?

3        A.    Six years.

4        Q.    And your spouse, what does he do?

5        A.    He is a public maintenance worker.    He

6    works for the village.

7        Q.    And you have 2 children.    Are they

8    both in school?

9        A.    One is in school.    One is out on her

10   own.

11       Q.    What does she do?

12       A.    She works for an online university.

13   Don't ask me after that.

14       Q.    Have you ever served on a jury?

15       A.    No.

16       Q.    Have you ever been the victim of a

17   crime?

18       A.    No.

19       Q.    Any close friends or family ever been

20   the victim of a crime?

21       A.    My sister quite a while ago.

22       Q.    Anything about what happened to her

23   that would affect your ability to be a fair

24   juror?

1        A.    No.

2        Q.    Have you ever been accused of a crime?

3        A.    No.

4        Q.    Ever a witness or complainant in a

5   criminal case?

6        A.    No.

7        Q.    And you understand that the defendant

8   is presumed innocent of the charges that bring

9   him here?

10       A.    Yes.

11       Q.    It is the State's burden to prove him

12  guilty beyond a reasonable doubt?

13       A.    Yes.

14       Q.    And do you understand that the

15  defendant does not need to prove his innocence

16  and does not need to call any witnesses or

17  presents any evidence?

18       A.    Yes.

19       Q.    If he chooses not to testify, you must

20  not consider that in any way in arriving at your

21  verdict?

22       A.    Yes.

23       Q.    And if he does testify, that you are

24  to evaluate his testimony in the same manner and

1    by the same standard you would evaluate the

2    testimony of any other witness?

3        A.    Yes.

4        Q.    And do you have any close friends or

5    family who are involved in law enforcement?

6        A.    No.

7        Q.    If the State fails to prove the

8    defendant guilty beyond a reasonable doubt, would

9    you be able to return a verdict of not guilty?

10        A.    Yes.

11        Q.    If the State does meet its burden of

12    proof beyond a reasonable doubt, would you be

13    able to sign verdict form of guilty?

14        A.    Yes.

15        Q.    Thank you.

16                    TED KODAMA,

17    a prospective juror, having been first duly sworn

18    to answer questions, was examined as follows:

19                    EXAMINATION

20                    BY THE COURT:

21        Q.    You live in Chicago?

22        A.    Yes.

23        Q.    What part?

24        A.    North side.

1        Q.    And how long have you lived there?

2        A.    All my life.

3        Q.    Can you tell us where you work, what

4    you do?

5        A.    I work for a company, Craftsman

6    Plating and Tinning.  It's a metal finishing job

7    shop.  I am a manager.

8        Q.    And you are married.  What does your

9    spouse do?

10       A.    She works in a dental office.

11       Q.    You have one grown child?

12       A.    Yes.

13       Q.    What does he or she do?

14       A.    He is a fireman in the City of

15   Chicago.

16       Q.    Have you ever been a victim of a

17   crime?

18       A.    Yes.

19       Q.    Can you tell us about that?

20       A.    I was broken into and robbed.

21       Q.    How long ago?

22       A.    While in college.

23       Q.    And is there anything about that that

24   would affect your ability to be a fair juror in

1    this case?

2        A.    I don't think so.

3        Q.    Has anybody else close to you been the

4    victim of a crime?

5        A.    I don't think so.

6        Q.    And have you ever been a witness or

7    complainant in a criminal case?

8        A.    No.

9        Q.    Have you ever been accused of a crime?

10       A.    No.

11       Q.    Do you understand that the defendant

12   is presumed innocent of the charges that bring

13   him here?

14       A.    Yes.

15       Q.    And that this is the State's burden of

16   proving the defendant's guilt beyond a reasonable

17   doubt?

18       A.    Yes.

19       Q.    And do you understand that the

20   defendant does not need to prove his innocence,

21   does not need to call any witness or present any

22   evidence on his behalf?

23       A.    Yes.

24       Q.    And if he chooses not to testify, you

1    understand that you must not consider that in any

2    way in arriving at your verdict?

3        A.    Yes.

4        Q.    If he does testify, that you would

5    evaluate his testimony in the same manner and by

6    the same standards you would evaluate the

7    testimony of any other witness?

8        A.    Yes.

9        Q.    And do you have any close friends or

10   family involved in law enforcement?

11       A.    Yes.

12       Q.    Can you tell us about that?

13       A.    A good number of my son's friends are

14   police officers.

15       Q.    Anything about your relationship with

16   them that would affect your ability to be a fair

17   juror in this case?

18       A.    I don't think so.

19       Q.    If the State fails to prove the

20   defendant guilty beyond a reasonable doubt, would

21   you be able to return a verdict of not guilty?

22       A.    Yes.

23       Q.    And if the State does meet its burden

24   of proof beyond a reasonable doubt, would you be

```
1       able to sign a verdict form of guilty?

2               A.    Yes.

3               THE COURT:  Thank you.

4                                ANNETTE DARIANO,

5       a prospective juror, having been first duly sworn

6       to answer questions, was examined as follows:

7                                EXAMINATION

8                                BY THE COURT:

9               Q.    You live in Chicago?

10              A.    Yes.

11              Q.    What part?

12              A.    Lincoln square.

13              Q.    How long have you lived there?

14              A.    3 years.

15              Q.    Can you tell us where you work, what

16      you do?

17              A.    I work in a market research firm.  I

18      don't have a job title.  I do a little bit of

19      everything.  It's my day job.  I am also a film

20      maker.

21              Q.    Is that freelance?

22              A.    Yes.

23              Q.    And you are single?

24              A.    Yes.
```

1       Q.    Have you ever served on a jury?

2       A.    No.

3       Q.    Have you ever been the victim of a

4    crime?

5       A.    Yes.

6       Q.    Can you tell us about that?

7       A.    My car was broken into, and a lot of

8    things were stolen.  My house was broken into,

9    and a lot of things were stolen.

10      Q.    Was anybody apprehended or charged in

11   connection?

12      A.    No, never found.

13      Q.    How long ago?

14      A.    The car was in college and the house

15   was probably '97.

16      Q.    Is there anything about those

17   experiences that would affect your ability to be

18   a fair juror in this case?

19      A.    I hope not because I think about them

20   and I am getting angry.

21      Q.    Would you base your decision on the

22   evidence you hear from the witnesses and the

23   documents presented in this case?

24      A.    Yes.

1          Q.    Have you ever been a witness or

2     complainant in a criminal case?

3          A.    No.

4          Q.    Have you ever been accused of a crime?

5          A.    No.

6          Q.    Do you understand that the defendant

7     is presumed innocent of the charges?

8          A.    Yes.

9          Q.    And it is the State's burden of

10     proving the defendant's guilt beyond a reasonable

11     doubt?

12          A.    Yes.

13          Q.    Do you understand that the defendant

14     does not need to prove his innocence, does not

15     need to call witnesses or present evidence on his

16     behalf?

17          A.    Yes.

18          Q.    And do you understand if he chooses

19     not to testify, that you must not consider that

20     in any way in arriving at your verdict?

21          A.    Yes.

22          Q.    If he does testify, that you would

23     judge his testimony in the same manner and by the

24     same standards you judge the testimony of any

1    other witness?

2          A.    Yes.

3          Q.    And do you have any close friends or

4    family in law enforcement?

5          A.    Yes.

6          Q.    Who would they be?

7          A.    Friend of mine.  I don't know what

8    precinct he is in.

9          Q.    Chicago Police Officer?

10         A.    Yes.

11         Q.    Is there anything about your

12   relationship with that person that would affect

13   your ability to be a fair juror in this case?

14         A.    I don't think so.

15         Q.    You understand that simply because

16   someone is a police officer, their testimony is

17   not to be given any greater or lesser weight, and

18   you are to evaluate the testimony of all the

19   witnesses in the same manner?

20         A.    Yes.

21         Q.    If the State fails to prove the

22   defendant guilty beyond a reasonable doubt, would

23   you be able to sign a verdict of not guilty?

24         A.    Yes.

1    Q.    If the State meets its burden of proof

2    beyond a reasonable doubt, would you be able to

3    sign a verdict of guilt?

4    A.    Yes.

5    THE COURT: Thank you.

6                              AMERICA FARAH,

7    a prospective juror, having been first duly sworn

8    to answer questions, was examined as follows:

9                              EXAMINATION

10                             BY THE COURT:

11    Q.    You live in Chicago?

12    A.    Yes.

13    Q.    What part?

14    A.    North side.

15    Q.    How long have you lived there?

16    A.    About 11 years.

17    Q.    You are a housewife?

18    A.    Yes.

19    Q.    And you have one child?

20    A.    Yes.

21    Q.    Your husband, what does he do?

22    A.    He is a store owner.

23    Q.    Where?

24    A.    He owns a store.

1          Q.    What type of store?

2          A.    Clothing store.

3          Q.    And have you ever served on a jury?

4          A.    I was never -- they didn't

5     deliberate.  They reached an agreement.

6          Q.    You were selected on a jury, but they

7     reached an agreement?

8          A.    Yes.

9          Q.    Did you hear any parts of the case?

10         A.    No.

11         Q.    You were selected and then they

12    settled the case?

13         A.    Yes, they said they reached an

14    agreement and they dismissed us.

15         Q.    Have you ever been the victim of a

16    crime?

17         A.    Yes.

18         Q.    Tell us what happened?

19         A.    Well, it was a while ago.  I was

20    robbed.  I was a cashier and our car was broken

21    into in front of our house.  My husband about ten

22    years ago was robbed at gunpoint.

23         Q.    Is there anything about any of those

24    incidents that would affect your ability to be a

1    fair juror in this case?

2          A.    I don't think so.

3          Q.    Would you be able to listen to the

4    evidence in this case and base your decision upon

5    what you hear in this courtroom?

6          A.    Yes.

7          Q.    You understand that the defendant is

8    presumed innocent of the charges?

9          A.    Yes.

10         Q.    And that it is the State's burden of

11   proving the defendant's guilt beyond a reasonable

12   doubt?

13         A.    Yes.

14         Q.    You understand that the defendant does

15   not need to prove his innocence, does not need to

16   call any witnesses or present any evidence on his

17   own behalf?

18         A.    Yes.

19         Q.    And you understand if he chooses not

20   to testify, that you must not consider that in

21   any way in arriving at your verdict?

22         A.    Yes.

23         Q.    If he does testify, that you are to

24   evaluate his testimony in the same manner, by the

1    same standards you would the testimony of any

2    other witness?

3         A.    Yes.

4         Q.    And do you have any close friends or

5    family involved in law enforcement?

6         A.    No.

7         Q.    If the State fails to prove the

8    defendant guilty beyond a reasonable doubt, would

9    you be able to sign a verdict form of not guilty?

10        A.    Yes.

11        Q.    If they do meet their burden of proof

12   beyond a reasonable doubt, would you be able to

13   sign a verdict form of guilty?

14        A.    Yes.

15        THE COURT: Thank you.

16                        JOSEPH MIKLITSCH,

17   a prospective juror, having been first duly sworn

18   to answer questions, was examined as follows:

19                        EXAMINATION

20                        BY THE COURT:

21        Q.    You live in Elgin?

22        A.    Yes.

23        Q.    How long have you lived in that area?

24        A.    7 years.

1          Q.    And can you tell us what you do?

2          A.    Police Officer for the city of Elgin.

3          Q.    And how long have you been a police

4     officer?

5          A.    9 years.

6          Q.    And are you married?

7          A.    Yes.

8          Q.    What does your spouse do?

9          A.    A police officer.

10         Q.    Also for Elgin?

11         A.    No, South Elgin.

12         Q.    Have you ever served on a jury?

13         A.    No.

14         Q.    Have you ever been the victim of a

15    crime?

16         A.    Numerous times.

17         Q.    And can you tell us about that?

18         A.    Well, attempted burglary of my house.

19    Also many times when I am working, arresting

20    people, I'm getting punched, kicked, spit on.

21         Q.    Do you believe you can be a fair juror

22    in this case?

23         A.    I believe that I would probably start

24    out with preconceived ideas, to be honest with

1    you.

2         Q.    I appreciate your candor.  Thank you

3                        KIM JUNG,

4    a prospective juror, having been first duly sworn

5    to answer questions, was examined as follows:

6                        EXAMINATION

7                   BY THE COURT:

8         Q.    You live in Park Ridge?

9         A.    Yes.

10        Q.    And how long have you lived there?

11        A.    6 years.

12        Q.    Can you tell us where you work, what

13   you do?

14        A.    I work for Comcast and I do quality

15   assurance.

16        Q.    And are you married?

17        A.    Yes.

18        Q.    What does your spouse do?

19        A.    He is working for senior housing and

20   office rental.

21        Q.    And have you ever served on a jury?

22        A.    No.

23        Q.    Have you ever been the victim of a

24   crime?

1          A.     Well, I never thought about a car

2     broken as a crime, but yes, our car was broke in.

3          Q.     And was anybody charged or apprehended

4     in connection with that?

5          A.     No, we just heard there was some young

6     kids broke into the garage.  We read it in the

7     newspaper but didn't know how it happened.

8          Q.     Is there anything about that

9     experience that would affect your ability to be a

10    fair juror in this case?

11         A.     I don't think so.

12         Q.     Is there any or instance where you or

13    someone close to you has been the victim of a

14    crime?

15         A.     My little brother used to be in a

16    business, and the store was getting robbed and my

17    cousin.  Most of the people around me have a

18    store.  So most of the Christmas time, little

19    small things happen.

20         Q.     Would that affect your ability to be a

21    fair juror in this case?

22         A.     I don't think so.

23         Q.     Have you ever been a witness or

24    complainant in a criminal case?

1        A.    No.

2        Q.    Have you ever been accused of a crime?

3        A.    No.

4        Q.    You understand that the defendant here

5    is presumed innocent of the charges that are

6    brought here?

7        A.    Yes.

8        Q.    You understand that it's the State's

9    burden of proving him guilty beyond a reasonable

10   doubt?

11       A.    Yes.

12       Q.    And you understand the defendant does

13   not have to prove his innocence, does not need to

14   call witnesses in or present evidence on his

15   behalf?

16       A.    Yes.

17       Q.    If he chooses not to testify, you must

18   not consider that in any way in arriving at your

19   verdict?

20       A.    Yes.

21       Q.    If he does testify, that you are to

22   evaluate his testimony in the same manner and by

23   the same standards you would the testimony of any

24   other witness?

1       A.      Yes.

2       Q.      You have to answer out loud?

3       A.      Yes.

4       Q.      And do you have any close friends or

5    family involved in law enforcement?

6       A.      No.

7       Q.      And if the State fails to prove the

8    defendant guilty beyond a reasonable doubt, would

9    you be able to sign a verdict of not guilty?

10       A.      I guess that's the law here that you

11    have to follow.

12       Q.      So you will be instructed that the if

13    State fails to meet its burden of proof beyond a

14    reasonable doubt, that you should sign a verdict

15    form of not guilty?

16       A.      Right.

17       Q.      If the State does meet its burden of

18    proof beyond a reasonable doubt, that you should

19    sign a verdict form of guilty.  Would you be able

20    to follow that?

21       A.      Well, to be very honest, I am not

22    familiar with the situation since I grow up in

23    different culture.  Our system was not like you

24    have to prove.  There's a different system but if

1    that was the guideline, I can follow.

2         Q.    You obviously don't know what you are

3    going to hear and what the evidence is going to

4    be, and you are not going to receive the Court's

5    instruction on the law until the end of the

6    case.  But if you are sworn in as a juror in this

7    case, you will take an oath and you will raise

8    your right happened and swear that you will apply

9    the law to the facts of the case?

10        A.    If that's the guideline to follow,

11   then I would follow them.

12        Q.    That is the guideline.  The burden is

13   one of beyond a reasonable doubt.  If the State

14   meets that burden, then you will be instructed to

15   enter a finding of guilty.  If the State fails to

16   meet that burden, then you will be instructed to

17   enter a verdict of not guilty?

18        A.    Okay.

19        Q.    Would you have any difficulty

20   following those instructions?

21        A.    I will follow.

22        THE COURT:  Thank you.  Then at this time we

23   are going to take a short recess.  I am going to

24   meet with Mr. Griffin and the attorneys so I am

1    going to ask all of you to step out in the

2    hallway and take with you your personal

3    belongings.  There's a rest room you can use.  We

4    will call you back in.

5                    (The following proceedings were had

6                    out of the presence and hearing of

7                    the jury:)

8    THE COURT:  Each of you do have the right to

9    question these jurors further if you wish.  Do

10   you wish to ask any additional questions of the

11   jurors, Mr. Griffin?

12   THE DEFENDANT: No.

13   THE COURT:  State do you wish to?

14   MS. CALLAS:  No.

15   THE COURT:  At this time there was a couple

16   jurors who I think we need to address for cause

17   challenges.  The first was Miss Vega who said she

18   doesn't understand English, so I did not question

19   her very extensively.  If there is no objection

20   from either side, I will excuse her for cause.

21   MS. CALLAS:  No objection.

22   THE DEFENDANT:  I am satisfied, your Honor,

23   with it.

24   THE COURT:  She doesn't understand English.

1        THE DEFENDANT: I am satisfied she

2    understands.   She will be able to understand

3    witness.

4        THE COURT:   The number 3 juror, the third

5    lady?

6        THE DEFENDANT:   Yes, I know, the Spanish

7    lady, yes.

8        THE COURT:   You believe she can understand?

9        THE DEFENDANT:   Yes.

10       THE COURT:   Then I am going to have to

11   question her further because she told me --

12       THE DEFENDANT: She speaks Spanish.

13       THE COURT:   But the testimony is going to be

14   in English?

15       THE DEFENDANT: I know.

16       THE COURT:   What about Mr. Burke who is

17   getting married?

18       THE DEFENDANT: Yes, I am satisfied with the

19   jury.

20       MS. CALLAS:   Judge, we are going to strike

21   Mr. Burke as our peremptory.   We will also strike

22   Miss Vega as our peremptory.

23       THE COURT:   Then I am going to present the

24   first 4 jurors.   We are going to accept in panels

1    of 4.  The first is Carlisle Rex-Waller, Kimberly

2    Condon.  Then the next juror would be David

3    Burke, and the State is going to excuse him.

4    Then that moves no the next juror, Frank Patzke

5    and Ryan Migawa.

6           MS. CALLAS:  We are satisfied.

7           THE COURT:  Would you accept this first 4?

8           THE DEFENDANT: Yes.

9           THE COURT:  So those are our first 4.  Then

10   the next group of 4 is Leyla Touma, Steven

11   Foster, Cynthia Nolan, Ted Kodama.  Do you accept

12   that 4?

13          THE DEFENDANT: Yes.

14          THE COURT:  State?

15          MS. CALLAS:  We accept that 4.

16          THE COURT:  Then the next 4 are Annette

17   Dariano, America Farah, Joseph Miklitsch and Jung

18   Kim.

19          MS. CALLAS:  Judge, we accept that panel.

20          THE COURT:  Mr. Griffin?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Okay.  So we have 12 jurors.

23   Mr. Miklitsch is an Elgin police officer.

24          THE DEFENDANT: Yes.

1          THE COURT:  You are accepting him?

2          THE DEFENDANT:  Yes.

3          THE COURT:  I am going to excuse him for

4    cause because he told me he did not believe that

5    he could be fair in cases involving police

6    officers, and he is an Elgin police officer.  He

7    said he would have some preconceived -- I am

8    going to excuse him.

9          THE DEFENDANT: I accepted him.

10         THE COURT:  I understand that, sir.  We have

11   11 jurors.  We are going to need 3 more jurors.

12   Why don't we take 2 minutes and then bring the

13   jurors back in.  I will have the 11 jurors who

14   are selected retire to the jury room.  I can

15   dismiss these few and call more jurors in for

16   questioning.  We will keep the 11 out here.

17              How many all the nets do you want?

18         THE COURT:  2.

19         THE COURT:  Maybe we will do 3 because of

20   the snow.

21         MS. CALLAS:  Sure.

22         THE COURT:  All right.

23                (The following proceedings were had

24                in the presence and hearing of

0 - 63

1              the jury:)

2         THE COURT: Some of you are going to be

3    excused.  I do thank you for your service.

4    Everyone of you are important.  If you weren't

5    all here today on this snowy day, we wouldn't be

6    able to pick a jury.

7              Mr. Burke, congratulations, good luck

8    and you are excused.

9              Miss Vega and Joseph Miklitsch, the 3

10   of are you excused at this time.  If the jurors

11   would just move down and the clerk will call 3

12   additional jurors.

13        THE CLERK: Sydney Weiner, Joseph Aichinger,

14   and Beth Augustyn.

15                   SYDNEY WEINER,

16   a prospective juror, having been first duly sworn

17   to answer questions, was examined as follows:

18                   EXAMINATION

19                   BY THE COURT:

20   Q.    You live in Skokie?

21   A.    Yes, 30 years.

22   Q.    You are retired.  Where did you work?

23   A.    I had a small scrap company.

24   Q.    And your spouse, is she working or

1    retired?

2         A.    She is works part-time at a market

3    research company.

4         Q.    And you have 3 grown children?

5         A.    Yes.

6         Q.    What do they do?

7         A.    One is a dental hygienist.  One is a

8    male nurse, and the other is in the moving

9    business.

10        Q.    And have you ever served on a jury?

11        A.    Many years ago.  It was with a short

12    case.

13        Q.    And you understand that the defendant

14    in this case is presumed innocent of the charges

15    that bring him here?

16        A.    Yes.

17        Q.    And you understand that he does not

18    need to prove his innocence, does not need to

19    present any witnesses or call any witnesses?

20        A.    Yes.

21        Q.    And do you understand it is the

22    State's burden to prove the defendant guilty

23    beyond a reasonable doubt?

24        A.    Yes.

1          Q.    And if the State fails to prove the

2    defendant guilty beyond a reasonable doubt, he

3    does not need to testify on his own behalf if he

4    chooses not to testify.  You must not consider

5    that in any way in arriving at your verdict?

6          A.    I do.

7          Q.    And if he does testify, you understand

8    that you are to evaluate his testimony in the

9    same manner and by the same standards you would

10   the testimony of any other witness?

11         A.    Yes.

12         Q.    And have you ever been a victim in a

13   crime?

14         A.    Yes.

15         Q.    Can you tell us about that?

16         A.    Numerous times, armed robbery.

17         Q.    How long ago?

18         A.    About 15 years ago.

19         Q.    And was anybody apprehended or

20   charged?

21         A.    Never.

22         Q.    And is there anything about that

23   experience that would affect your ability to be a

24   fair juror in this case?

1        A.    I hope not.

2        Q.    Would you be able to base your

3    decision on the evidence you hear in this

4    courtroom?

5        A.    I believe so.

6        Q.    And if the State fails to prove the

7    defendant guilty beyond a reasonable doubt, would

8    you be able to sign a verdict form of not guilty?

9        A.    I believe so.

10       Q.    And if the State proves the defendant

11   guilty beyond a reasonable doubt, would you be

12   able to sign a verdict form of guilty?

13       A.    I believe so.

14       Q.    And have you ever been accused of a

15   crime?

16       A.    No.

17       Q.    Have you ever been a witness other

18   than what you have already described or a

19   complainant?

20       A.    No.

21       Q.    And do you have any close friends or

22   family involved in law enforcement?

23       A.    Close friend is a Skokie police

24   officer.

1          Q.     And is there anything about your

2     relationship with that friend that would affect

3     your ability to be a fair juror in this case?

4          A.     I don't think so.

5                              JOSEPH AICHINGER,

6     a prospective juror, having been first duly sworn

7     to answer questions, was examined as follows:

8                              EXAMINATION

9                              BY THE COURT:

10         Q.     You live in Arlington Heights?

11         A.     Yes.

12         Q.     And how long have you lived in that

13    area?

14         A.     18 years.

15         Q.     And you are retired as well.  Where

16    did you work before?

17         A.     Commonwealth Edison.

18         Q.     And your spouse, where did she work?

19         A.     A bank.

20         Q.     You have 2 grown children.  What do

21    they do?

22         A.     Computers.

23         Q.     Have you ever served on a jury?

24         A.     4 times; 1 civil, 3 criminal.

1      Q.     You understand the burden of proof?

2      A.     Yes.

3      Q.     It's the State's burden to prove the

4    defendant guilty beyond a reasonable doubt?

5      A.     Yes.

6      Q.     And that the defendant does not need

7    to call any witnesses or present any evidence?

8      A.     Right.

9      Q.     You also know that I need to ask these

10   questions.

11     A.     Yes.

12     Q.     And you understand that if the

13   defendant chooses not to testify, that you may

14   not consider that in arriving at your verdict?

15   If he does testify, that you are to evaluate his

16   testimony in the same manner and by the same

17   standards you would the testimony of any other

18   witness?

19     A.     Yes.

20     Q.     So you understand the presumption of

21   innocence.  Have you ever been the victim of a

22   crime?

23     A.     No.

24     Q.     Has anybody close to you ever been?

1        A.    My wife had her wallet stolen about

2   ten years ago.

3        Q.    I take it that would not affect your

4   ability to be a fair juror?

5        A.    No.

6        Q.    And have you ever been accused of a

7   crime?

8        A.    No.

9        Q.    And ever a witness or complainant in a

10  criminal case?

11       A.    No.

12       Q.    And any close friends or family

13  involved in law enforcement.

14       A.    I have a nephew who is a Rosemont

15  detective.  My neighbor is a deputy in Des

16  Plaines.  I got a retired buddy who is a Chicago

17  police officer.

18       Q.    Would your relationship with those

19  people affect your ability to be fair and

20  impartial juror?

21       A.    No.

22       Q.    Do you understand that simply because

23  someone is a sworn officer, that they are not

24  entitled to any greater believability or less

1    believability?

2         A.    Yes.

3                        BETH AUGUSTYN,

4    a prospective juror, having been first duly sworn

5    to answer questions, was examined as follows:

6                        EXAMINATION

7                        BY THE COURT:

8         Q.    You live in Chicago?

9         A.    Yes.

10        Q.    And what part?

11        A.    Lake View.

12        Q.    How long?

13        A.    4 years.

14        Q.    Can you tell us where you work and

15   what you do?

16        A.    I am a nurse practitioner.  I work in

17   a group of pulmonologists.

18        Q.    You are single?

19        A.    Yes.

20        Q.    Have you ever served on a jury?

21        A.    No.

22        Q.    Have you ever been the victim of a

23   crime?

24        A.    No.

1          Q.    Has anybody close to you ever been the

2    victim of a crime?

3          A.    No.

4          Q.    Ever been accused of a crime?

5          A.    No.

6          Q.    Ever been a witness or complainant in

7    a criminal case?

8          A.    No.

9          Q.    And you understand that the defendant

10   is presumed innocent of the charges?

11         A.    Yes.

12         Q.    And that it is the State's burden to

13   prove the defendant guilty beyond a reasonable

14   doubt?

15         A.    Yes.

16         Q.    And do you understand that the

17   defendant does not need to prove his innocence,

18   does not need to call any witness or present any

19   evidence on his behalf?

20         A.    Yes.

21         Q.    And do you understand that if the

22   defendant chooses not to testify, that you may

23   not consider that in any way in arriving at a

24   verdict?

1        A.    Yes.

2        Q.    And if he does testify, that you are

3    to evaluate his testimony in the same manner and

4    by the same standards you would the testimony of

5    any other witness?

6        A.    Yes.

7        Q.    And do you have any close friends or

8    family who are involved in law enforcement?

9        A.    No.

10       Q.    If the State fails to prove the

11   defendant guilty Beyond a reasonable doubt, would

12   you be able to sign a verdict form of not guilty?

13       A.    Yes.

14       Q.    And if the State meets its burden of

15   proof beyond a reasonable doubt, would you be

16   able to return a verdict form of guilty?

17       A.    Yes.

18       THE COURT: Any additional questions of these

19   jurors?

20       MS. CALLAS:  No.

21       THE COURT:  Mr. Griffin, any additional

22   questions?

23       THE DEFENDANT: No.

24       THE COURT:  I am going to ask the clerk to

1        call one more juror for questioning.

2              THE CLERK: Daniel Crowe.

3                          DANIEL CROWE,

4        a prospective juror, having been first duly sworn

5        to answer questions, was examined as follows:

6                          EXAMINATION

7                          BY THE COURT:

8              Q.    Mr. Crowe, you live in Chicago?

9              A.    Yes, north side.

10             Q.    How long have you lived there?

11             A.    18 years.

12             Q.    And can you tell us where you work and

13       what you do?

14             A.    I am a field inspector for Cook County

15       Assessor's office.

16             Q.    And what do you do?

17             A.    I measure buildings to determine the

18       square footage, usage, things like that.

19             Q.    And what's your marital status?

20             A.    Married.

21             Q.    Does your wife work?

22             A.    No, she is retired.

23             Q.    What did she do?

24             A.    She used to work in nursing.

1          Q.    And have you ever served on a jury?

2          A.    No.

3          Q.    And have you ever been the victim of a

4     crime?

5          A.    No.

6          Q.    Has anybody close to you ever been the

7     victim of a crime?

8          A.    No.

9          Q.    Have you ever been accused of a crime?

10         A.    No.

11         Q.    Ever a witness or complainant in a

12    criminal case?

13         A.    No.

14         Q.    Do you understand that the defendant

15    is presumed innocent of the charges?

16         A.    Yes.

17         Q.    And that it is the State's burden to

18    prove the defendant's guilt beyond a reasonable

19    doubt?

20         A.    I understand that.

21         Q.    You understand that the defendant does

22    not need to prove his innocence, does not need to

23    call witnesses or present any evidence on his own

24    behalf?

1          A.    Yes.

2          Q.    Do you understand that if the

3    defendant chooses not to testify, you must not

4    consider that in any way in arriving at your

5    verdict?

6          A.    Yes.

7          Q.    If he does testify, you understand you

8    are to evaluate his testimony in the same manner

9    you would the testimony of any other witness?

10         A.    Yes.

11         Q.    Do you have any close friends or

12   family involved in law enforcement?

13         A.    No.

14         Q.    If the State fails to meet their

15   burden of proof beyond a reasonable doubt, would

16   you be able to sign a verdict form of not guilty?

17         A.    Yes, I could.

18         Q.    If the State does prove the defendant

19   guilty beyond a reasonable doubt, would you be

20   able to sign a verdict form of guilty?

21         A.    Yes.

22         THE COURT: Any additional questions of any

23   of the additional jurors?

24         MS. CALLAS:  No.

1          THE COURT:  Mr. Griffin?

2          THE DEFENDANT:  No, I am satisfied with the

3     jury.

4          THE COURT:  I will take a short recess.  We

5     will have the jury step out into the hall.

6               (The following proceedings were had

7               out of the presence and hearing of

8               the jury:)

9          THE COURT:  When we last broke, had we

10    accepted the last panel and Annette Dariano?

11         MS. CALLAS:  We hadn't accepted that yet.

12    We needed a fourth.

13         THE COURT:  America Farah, Jung Kim.  The

14    next juror would be Sydney Weiner.

15         MS. CALLAS:  The People accept.

16         THE DEFENDANT: I accept.

17         THE COURT:  So that is the 12 jurors.  The

18    first alternate would be Joseph Aichinger.  Do

19    you accept that juror?

20         MS. CALLAS:  Accept.

21         THE DEFENDANT: I accept it.

22         THE COURT:  Mr. Aichinger is our first

23    alternate.  The second alternate is Beth

24    Augustyn.

1          MS. CALLAS:  People accept.

2          THE DEFENDANT: I accept.

3          THE COURT:  And in light of the weather, I

4      am going to select a third alternate.  The third

5      would be Daniel Crowe.

6          MS. CALLAS:  People accept.

7          THE DEFENDANT: Accept.

8          THE COURT:  We have a jury.  In terms of our

9      schedule, I know we selected this jury quicker

10     than I had anticipated.  In light of the weather

11     today, I don't know if the State has any

12     witnesses.  They were here earlier.

13         MS. CALLAS:  We expected the jury selection

14     to last throughout the day.  In light of the

15     weather, they have been instructed to come back

16     tomorrow morning.

17         THE COURT:  I am going to ask the jury to

18     come back at 11:00 o'clock.  We will work

19     straight through.  There's a good chance we might

20     get this case to the jury tomorrow.

21         MS. CALLAS:  We have a conflict.  We need

22     about 45 minutes between 12:30 and 1:30, but the

23     jury can go to lunch then.

24         THE COURT:  There's a death one of their

1    fellow State's Attorney's at lunch time.  We will

2    make arrangements for that as well.  So we will

3    begin with opening statements and go to the

4    evidence.  What about jury instructions.

5         MS. CALLAS:  They are prepared.  We will

6    present them.  We can have a conference at the

7    close of the case.

8         THE COURT:  You will get a copy of those to

9    Mr. Griffin.

10        MS. CALLAS:  We will give him a copy at the

11   close.  When would you like us to give him a

12   copy?

13        THE COURT:  If you have them today.  If not,

14   in the morning.  As soon as you have them, you

15   can make them available to him.

16        MS. CALLAS:  Just so the defendant

17   understands, there's 2 instructions.  One is if

18   you do testify and the other is if you don't.  We

19   will give you both.  One or the other will be

20   presented depending on whether you are going to

21   testify.

22        THE DEFENDANT: Okay.

23        THE COURT:  Let's bring the jurors back in.

24             (The following proceedings were had

1              in of the presence and hearing of

2              the jury:)

3         THE COURT: We do have a jury selected.

4    Those of you who are seated in the jury box have

5    been selected as jurors on this case.  Let me

6    first address those of you seated in the back.  I

7    thank you for your service.  It is very important

8    to have all of you here because otherwise we

9    cannot proceed with jury selection if we don't

10   have all of you here.  If you will go with the

11   deputy, he will give you further instruction, but

12   thank you very much for your time and presence

13   here today.

14              For those of you seated in the jury

15   box, you have been selected as jurors in this

16   case.  We were able to select this jury a little

17   quicker than anticipated.  In light of the

18   weather, I am going to let you go home at this

19   time.  I am going to ask that you are back here

20   tomorrow at 11:00 o'clock.  I do have cases up in

21   the morning.  Hopefully the roads will be clear

22   and you will be able to get here by 11:00

23   o'clock.  We will provide lunch for you

24   tomorrow.  I won't comment on the quality of the

1    lunch, but lunch will be provided for you, so you

2    won't have to go out during lunch.  We will try

3    to move the case as best we can tomorrow.

4              Like I said, there's a chance the case

5    will go to Friday.  There's a slight chance that

6    you may have the case tomorrow to deliberate.

7    When we begin the case tomorrow, we will begin

8    with opening statements.  Each side will have an

9    opportunity to give an opening statement if they

10   choose and tell you what they believe the

11   evidence in the case will be.

12             Then the State has the burden of proof

13   as you have heard repeatedly here today.  They

14   have an opportunity to present their evidence to

15   you.  Once the State rests, the defense has an

16   opportunity to either rest and rely on the

17   State's inability to prove their case or to

18   present evidence.  After you have heard from both

19   sides, you will then hear closing arguments, if

20   the parties wish to make closing arguments.  I

21   will then instruct you on the law that you are to

22   apply to the case.  Then the case will be yours

23   to deliberate.

24             You will receive a copy of the

1    instructions on the law when you go back to the

2    jury room.  We haven't begun to receive any

3    evidence or to hear any testimony here today, but

4    once you do, it's critical that you not discuss

5    the case with anyone until after your

6    deliberations.  The reason for that is simple,

7    you are going to listen to witnesses, you are

8    going to observe that person testifying.  You are

9    doing yourself a disservice if you try to bounce

10   your ideas off somebody else.  You are the one

11   who has been selected as a juror.  You are the

12   one to decide the case based upon the evidence

13   you receive in this courtroom.

14        So once you are sworn as jurors in

15   this case, you are not to discuss this case with

16   anyone until you have reached a verdict.  Also if

17   you happen to run into somebody involved in the

18   case, nobody should be talking to you about this

19   case.  Hopefully you will all be able to get here

20   without trouble tomorrow by 11:00 o'clock.  Also

21   I am asking that they each receive the phone

22   number.  Take a copy of the courtroom phone

23   number because we can't begin without all of you

24   here.  I know I had one incident where we were

1    waiting for jurors for several hours.  One juror

2    had a flat tire.  Ever since then I have told

3    jurors if there's a problem, please call.  At

4    least we know what the circumstances are.

5              When you come in tomorrow, go to the

6    jury room downstairs where you came today.  Tell

7    them you have been selected as a juror in my

8    courtroom.  They will gather you together, then

9    bring you up to the jury room behind my courtroom

10   because I will have other cases going on prior to

11   this.

12             With that, have a good evening.  You

13   all have the courtroom phone number.  The deputy

14   is going to give it to you before you leave.  The

15   deputy has the phone number for you.  So just

16   take that in the event of any emergency.

17   Everybody have a good evening.  We will see you

18   tomorrow at 11:00.  Go to the jury room

19   downstairs and they will bring you up.

20             Anything further today, Mr. Griffin?

21        THE DEFENDANT:  No, ma'am, I am ready.

22        THE COURT:  As soon as the State has those

23   instructions, they will make them available to

24   you.

1          MS. SCHULTZ: How long is he going to be here

2     today?  I can have them shortly.

3          THE COURT:  You can ask the deputies.  If he

4     is here, you can get them to him.

5          MS. CALLAS:  May we inquire if it's

6     Mr. Griffin's decision to wear his Department of

7     Corrections clothing or if he would like to be

8     brought civilian clothes.

9          THE COURT:  Do you want to be brought in

10    civilian clothes?

11          THE DEFENDANT: No, ma'am.

12          THE COURT:  You also know, I explained that

13    civilian clothes would be available through the

14    Public Defender's office.

15          THE DEFENDANT: I don't need them.

16          THE COURT:  You don't wish to take avail of

17    those?

18          THE DEFENDANT: No, thank you.

19

20               (The above-entitled cause was

21                adjourned to January 6, 2005.)

22

23

24


                         O - 84

1    STATE OF ILLINOIS)

2                     )  SS:

3    COUNTY OF C O O K)

4

5        I, ROSEMARY STEPHENS, an Official Court

6    Reporter of the Circuit Court of Cook County, do

7    hereby certify that I reported in shorthand the

8    proceedings had on the hearing in the

9    aforementioned cause; that I thereafter caused

10   the foregoing to be transcribed into typewriting,

11   which I hereby certify to be a true and accurate

12   transcript of the report of Proceedings had

13   before the Honorable Sharon Sullivan, Judge of

14   said court.

15

16

17

18                     Rosemary Stephens,
                       Official Court Reporter
19

20

21

22   Dated this 23rd day of June, 2005.

23

24


0 - 85